## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BASHAYR NASSEE,<br><br>    Plaintiff,<br><br> v.<br><br>GIGCAPITAL3, INC., AVI S. KATZ, NIEL MIOTTO, JOHN MIKULSKY, RALUCA DINU, ANDREA BETTI-BERUTTO, and PETER WANG,<br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

  Plaintiff Bashayr Nassee ("Plaintiff") by and through Plaintiff's undersigned attorneys, brings this action on behalf of Plaintiff, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by GigCapital3, Inc. ("GigCapital" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning GigCapital3 and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against GigCapital3 and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Lightning Systems, Inc. ("Lightning Systems") (the "Proposed Transaction").

2. On December 10, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Lightning Systems. Pursuant to the terms of the Merger Agreement, Lightning Systems will merge with and into the Company, resulting in the Company's shareholders owning 24.3% of the combined company.

3. On December 31, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against GigCapital3 and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to GigCapital3 shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of GigCapital3 shares.

9. Defendant GigCapital3 is incorporated under the laws of Delaware and has its principal executive offices located at 1731 Embarcadero Road, Suite 200, Palo Alto, California. The Company's common stock trades on the New York Stock Exchange under the symbol "GIK."

10. Defendant Avi S. Katz ("Katz") is and has been the Chief Executive Officer and Chairman of the Board of GigCapital3 at all times during the relevant time period.

11. Defendant Niel Miotto ("Miotto") is and has been a director of GigCapital3 at all times during the relevant time period.

12. Defendant John Mikulsky ("Mikulsky") is and has been a director of GigCapital3 at all times during the relevant time period.

13. Defendant Raluca Dinu ("Dinu") is and has been a director of GigCapital3 at all times during the relevant time period.

14. Defendant Andrea Betti-Berutto ("Betti-Berutto") is and has been a director of GigCapital3 at all times during the relevant time period.

15. Defendant Peter Wang ("Wang") is and has been a director of GigCapital3 at all times during the relevant time period.

16. Defendants Katz, Miotto, Mikulsky, Dinu, Betti-Berutto, and Wang are collectively referred to herein as the "Individual Defendants."

17. The Individual Defendants, along with Defendant GigCapital3, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

18. GigCapital3 is a Private-to-Public Equity (PPE) company, also known as a blank check company or a special purpose acquisition company, incorporated as a Delaware corporation on February 3, 2020 and formed for the purpose of acquiring, through a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, recapitalization, exchangeable share transaction or other similar business transaction with one or more operating businesses or assets.

### The Company Announces the Proposed Transaction

19. On July 20, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

**LOVELAND, Colo. (Dec. 10, 2020)** – Lightning eMotors ("Lightning eMotors" or the "Company"), a leading provider of complete electrification solutions for commercial fleets, and GigCapital3, Inc. ("GIK" or "GigCapital3") (NYSE: GIK), a Technology, Media and Telecom (TMT) Private-to-Public Equity (PPE)™ corporation, today announced they have entered into a definitive agreement for a business combination that will result in Lightning eMotors becoming a publicly listed company. Upon closing of the transaction, the combined operating company will be named Lightning eMotors, Inc. and will be listed on the New York Stock Exchange under the ticker symbol ZEV.

Lightning eMotors is a high-growth electric vehicle manufacturer focused on urban commercial zero-emission vehicles. Lightning eMotors is the only operator with a full range of Class 3-7 battery-electric and fuel cell electric vehicles in production today, addressing the large and growing fleet electrification market. The Company's unique modular architecture, software-enabled platform, and integration capabilities provide a scalable, cost-effective solution to a highly segmented and customized market. Lightning eMotors' complete electrification solutions cover medium- and heavy-duty vocational vehicles including ambulances, delivery trucks, bucket trucks, food trucks, school buses and coach buses, among others. Lightning eMotors' significant time-to-market advantages over competitors have enabled the Company to capture a diverse base of blue-chip fleet customers, including Fluid Trucks, ABC Companies, ACE Parking and California State Hospitals. Currently, Lightning eMotors has a contracted order backlog of approximately 1,500 vehicles for delivery in 2021 and 2022, including the world's first fuel cell electric Class 6 truck. Lightning eMotors has the country's largest commercial zero-emission fleet vehicle manufacturing facility in the U.S. with annual production capacity of 1,000 vehicles today and expanding to 3,000 in 2021 and over 20,000 by 2025.

\*     \*     \*

**Transaction Overview**

Pursuant to the business combination, GigCapital3 will acquire Lightning eMotors through a reverse merger. The business combination values Lightning eMotors at approximately $823 million pro forma equity value, at $10.00 per share. The transaction will be funded by (i) the issuance of approximately $539 million in new common stock of GigCapital3 to current holders of Lightning eMotors securities, (ii) cash from the GigCapital3 trust account of approximately $202 million, assuming no redemptions by GigCapital3's stockholders, and (iii) Transaction supported by $125 million of gross proceeds from the issuance of equity and convertible financings in a Private Investment in Public Equity (PIPE) transaction, including a commitment from BP Technology Ventures and other leading institutional investors. Following the transaction and after the payment of transaction expenses, Lightning eMotors is expected to add over $270 million of cash to its balance sheet. Assuming no redemptions of GigCapital3 shares, the

current holders of Lightning eMotors securities will hold approximately 66% of the issued and outstanding shares of common stock immediately following the close of the transaction.

The boards of directors of both Lightning eMotors and GigCapital3 have unanimously approved the proposed business combination, which is expected to be completed in the first half of 2021, subject to, among other things, the approval by GigCapital3's stockholders, satisfaction of the conditions stated in the definitive agreement, including regulatory approvals, and other customary closing conditions, including a registration statement being declared effective by the U.S. Securities and Exchange Commission (the "SEC").

Additional information about the proposed transaction, including a copy of the merger agreement and investor presentation, will be provided in a Current Report on Form 8-K to be filed by GigCapital3 with the SEC and available at www.sec.gov. Additional information about the proposed transaction will be described in GigCapital3's registration statement relating to the merger, which it will file with the SEC.

**Advisors**

BofA Securities, Inc. is serving as exclusive financial advisor, and King & Spalding LLP is serving as legal advisor to Lightning eMotors. Oppenheimer & Co. Inc., Nomura Securities International, Inc., and BofA Securities, Inc. are serving as joint placement agents on the equity and convertible financing, and Mayer Brown is serving as legal counsel to the placement agents. Oppenheimer & Co. Inc. and Nomura Greentech are serving as joint financial advisors to GigCapital3. DLA Piper LLP (US) is serving as legal advisor to GigCapital3. ICR, LLC is serving as communications advisor for Lightning eMotors.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

20. On December 31, 2020, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

21. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Projections

22. The Registration Statement contains projections prepared by Lightning Systems' management concerning the Proposed Transaction, but fails to provide material information concerning such.

23. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

24. In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

25. Specifically, with respect to the Lightning Systems' projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Gross Profit; and (ii) EBITDA.

26. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of any analyses performed by the financial advisors in connection with the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding J.P. Morgan's Financial Opinion

27. The Registration Statement notes that despite engaging Nomura and Oppenheimer as financial advisors during the sales process leading up to the Proposed Transaction, the Board did not obtain a third-party valuation in connection with the Proposed Transaction. Instead, the Registration Statement notes that the Board used its own judgment to determine the Proposed Transaction is fair to GigCapital's shareholders.

28. The Registration Statement fails to provide any information as to what assistance was provided by Nomura and Oppenheimer in connection with the Proposed Transaction.

29. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Sales Process

30. The Registration Statement describes the events leading up to the Proposed Transaction, but fails to provide material information concerning such.

31. First, the Registration Statement fails to provide sufficient information concerning the engagement of financial advisors Nomura and Oppenheimer, including: (i) the specific roles of each financial advisor in the sales process; (ii) the analyses performed by each financial advisor in connection with the Proposed Transaction; (iii) the compensation each financial advisor was entitled to receive (or have already received) in connection with the sales process; and (iv) whether either Nomura or Oppenhaimer have performed past services for any of the parties to the Proposed Transaction.

32. Next, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements with any other interested third parties during the sales process, including whether such confidentiality agreements contained "don't-ask, don't-waive" or standstill provisions.

33. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such

information to shareholders although they could have done so without extraordinary effort.

39. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

40. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

42. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

43. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of GigCapital3 within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of GigCapital3, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains

the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

48. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states

all material facts required in it or necessary to make the statements contained therein not misleading;

  C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 22, 2021          Respectfully submitted,

                     By: */s/ Joshua M. Lifshitz*
                     Joshua M. Lifshitz
                     Email: jml@jlclasslaw.com
                     **LIFSHITZ LAW FIRM, P.C.**
                     821 Franklin Avenue, Suite 209
                     Garden City, New York 11530
                     Telephone: (516) 493-9780
                     Facsimile: (516) 280-7376

                     *Attorneys for Plaintiff*